UNITED STATES DISTRICT COURT OF THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING CO., LTD and PANGANG GROUP CHONGQING TITANIUM INDUSTRY CO., LTD., | Case No. 15-cv-9586 |
| Petitioners, | |
| -against- | |
| PETRO-CHEM DEVELOPMENT CO., INC. | |
| Respondent. | |

## PETITION TO CONFIRM A FOREIGN ARBITRATION AWARD

Pursuant to Chapter 2 of the Federal Arbitration Act (the "**FAA**"), codified at 9 U.S.C. §§ 201, *et. seq.*, Petitioners Pangang Group International Economic & Trading Co., Ltd. and Pangang Group Chongqing Titanium Industry Co., Ltd. ("**Petitioners**"), by and through their undersigned counsel, respectfully allege and state as their Petition against Petro-Chem Development Co., Inc. as follows:

## INTRODUCTION

1.      This is an action for recognition and enforcement of a foreign arbitral award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (the "**New York Convention**"), as implemented by the Federal Arbitration Act, codified at 9 U.S.C. §§ 1, *et seq.* and 9 U.S.C. §§ 201, *et seq.*

2.      The sixty-six-page, fully reasoned arbitral award was rendered in favor of Petitioners and against Respondent on December 12, 2014, by an arbitral tribunal (the "**Tribunal**") seated in Stockholm, Sweden after the Tribunal definitively addressed and dismissed all claims.  *See* Declaration of Carl W. Oberdier, sworn to December 7, 2015 ("**Oberdier Dec.**") ¶ 2 & Exhibit A (the "**Award**").

3.      The New York Convention, Article 3, obligates each contracting state to "recognize [foreign] arbitral awards as binding" and enforce them in accordance with local procedural law.

## THE PARTIES

4.      Petitioner Pangang Group International Economic & Trading Co., Ltd. ("**Pangang IET**") is a foreign limited liability company incorporated under the laws of the People's Republic of China with its headquarters at no. 266 Shawan Road, Jinniu District, Chengdu 610031, P.R. CHINA;

5.      Petitioner Pangang Group Chongqing Titanium Industry Co. Ltd. ("**Pangang Titanium**," and together with Pangang IET, Petitioners or "**Pangang**") is a foreign limited liability company incorporated under the laws of the People's Republic of China, with its headquarters at 51 Zouma Ercun, Banan District, Chonqing, 400055, P.R. CHINA;

6.      Respondent Petro-Chem Development Co., Inc. ("**Petro-Chem**") is an active, registered Delaware corporation, New York Department of State ID #1409331, with, upon information and belief, its principal place of business at 12012 Wickchester Ln., Ste. 550, Houston, Texas, 77079.

## JURISDICTION AND VENUE

*7.*     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and 9 U.S.C. § 203, because this action arises under the New York Convention to which the United States and Sweden are signatories, as implemented by the FAA, 9 U.S.C. § 201, *et seq.*

8.     This Court has personal jurisdiction over Petro-Chem under, *inter alia*, N.Y. Civ. Prac. L. & R ("**CPLR**") § 302(a)(1), because, during the relevant time period, including the events leading to the Award, Respondent's principal place of business was located at 122 E. 52nd St., New York, New York 10168-2399.  *See* Award ¶ 1.  Moreover, the operative Agreement was negotiated, executed, and performed at Respondent's New York headquarters. *See id.* ¶¶ 18, 174.  Accordingly, venue is proper in this District pursuant to 9 U.S.C. § 204, 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

9.     The Award resolves a dispute arising from two commercial contracts among the Parties for the purchase and sale of specialty industrial heaters.  *See* Award at 4 (the "**Contracts**").

10.     On August 22, 2010, Pangang entered into two contracts with Petro-Chem for the purchase of a TiCL4 Fluid differential Temperature Processing Unit (the "**TiCL4 Heater**") and for an O2 Fluid differential Temperature Processing Unit (the "**O2 Heater**," and together with the TiCL4 Heater, the "**Heaters**") at sales prices of $2,134,374.00 (USD) and $1,445,625.00 (USD), respectively (together, the "**Contracts**").  *See* Award ¶ 129. [1]

---

[1] Titanium dioxide is a white pigment used in paint, paper, plastics and other products.  Due to its high refractory index and brightness, it is one of the most widely used white pigments in the world.

11.     The executed Contracts contained valid and binding arbitration provisions

providing for arbitration in Stockholm, Sweden, and further stating, in salient part:

> 13.1 All disputes arising from the execution of the present Contract
> shall be settled through friendly consultation between both parties.
> In case no agreement can be reached through consultation, the
> disputes shall be submitted to arbitration.
>
> 13.2 The arbitration shall take place in Stockholm, Sweden, and be
> performed in accordance with the arbitration procedure and rules
> of the International Chamber of Commerce.  The committee of
> Arbitration shall be formed by 3 members appointed in accordance
> with the said Rules. The arbitration shall be carried out in Swedish.
>
> 13.3 The law applicable to the arbitration shall be decided by the
> arbitration committee.
>
> 13.4 The arbitration award shall be final and binding on both
> parties.
>
> 13.5 The arbitration fee and other expenses shall be borne by the
> losing party unless the arbitration committee rules otherwise.
>
> *See* Award ¶ 9 (quoting the Contracts).

## THE DISPUTE

12.     Pursuant to the modified terms of the Contracts, Pangang IET advanced to Petro-

Chem 15% of the purchase price for the TiCL4 Heater, and 10% of the purchase price of the O2

Heater, the refund of which was secured by a bank guarantee held at Bank of China (the "**Bank**

**Guarantee**").  *See* Award ¶ 132.  Pangang IET paid the Bank Guarantee on December 21, 2010,

and opened two letters of credit to cover the remaining purchase price on February 25, 2011.  *See*

*id.*

13.     On February 28, 2012, Petro-Chem notified Pangang in writing of its intent to

suspend performance under the Contracts due to its perception that continued performance would

expose Petro-Chem to third-party liability.  *See* Award ¶ 143.

14.     On March 15, 2012, Pangang assured Petro-Chem of its compliance with applicable laws and requested that Petro-Chem proceed with the manufacture and delivery of the Heaters, pursuant to the Contracts.  *See* Award ¶ 144.

15.     On March 16, 2012, Petro-Chem conditioned any further performance under the Contracts on its receipt of Pangang's adequate assurances that such performance presented no risk of potential criminal liability.  *See* Award ¶ 145.

16.     In its March 27, 2012 response, Pangang stated that Petro-Chem's demand for adequate assurances was unsupported by applicable law and demanded that Petro-Chem complete its performance obligations under the Contracts by May 20, 2012.  *See* Award ¶ 146.

17.     In the course of the Parties' ensuing attempt to resolve their dispute in June 2012, the Parties agreed to adjourn Petro-Chem's delivery deadline to December 31, 2012 (the "**Extended Delivery Deadline**").  *See* Award ¶ 149.  The refund dates for the Bank Guarantee and the Letters of Credit were extended to February 15, 2013.  *See id.*

18.     On July 27, 2012, Pangang IET called the Bank Guarantee on the grounds that Petro-Chem had unequivocally repudiated its obligations under the Contracts during the failed settlement discussions.  *See* Award ¶ 151.

19.     In response, Petro-Chem's parent company, Heurtey Petrochem ("**Heurtey**"), procured an order from the Commercial Court in Paris barring Pangang IET from calling the Bank Guarantee until after the Extended Delivery Deadline had passed.  In granting the order, the Court rejected Heurtey's allegations that any illegality of the underlying contracts precluded Pangang IET from drawing on the Bank Guarantee.  *See* Award ¶ 152.

20.     On January 17, 2013, after the Extended Delivery Date passed unfulfilled, Pangang IET again called the Bank Guarantee.  *See* Award ¶ 155.

21.     Petro-Chem's subsequent application for an order preventing the Bank of China from paying the Bank Guarantee to Pangang was rejected by the Commercial Court in Paris on May 30, 2013.  *See* Award ¶ 156.

22.     Petro-Chem obtained an injunction barring payment of the Bank Guarantee to Pangang from the Paris District Court on May 13, 2013, which was lifted on October 1, 2013. *See* Award ¶ 157.  Petro-Chem's subsequent appeal was rejected.

23.     On June 27, 2013, pursuant to the arbitration provisions set forth in the Contracts, Petro-Chem commenced arbitration by submitting a Request for Arbitration to the Secretariat of the International Court of Arbitration of the International Chamber of Commerce (the "**ICC**"). *See* Award ¶ 21.

## THE ARBITRATION PROCEEDINGS

24.     On September 18, 2013, the Secretary General of the ICC (the "**Secretary General**") confirmed, pursuant to Article 13(2) of the Rules of Arbitration of the International Chamber of Commerce in force as of January 1, 2012 (the "**ICC Rules**"), Mr. Sigvard Jarvin, JDr, as co-arbitrator upon Petro-Chem's nomination, and Mr. Christopher Moger QC as co-arbitrator upon Pangang's joint nomination.  *See* Award ¶ 6.

25.     On October 3, 2013, a third arbitrator, Mr. Alexander Foerster, was proposed by the German National Committee and appointed by the Court pursuant to Article 13(3) of the ICC Rules.  *See* Award ¶ 39.

26.     Pangang and Petro-Chem agreed to English as the language of the arbitration.  *See* Award ¶¶ 15-16.

27.     At the outset of the arbitral proceedings, Petro-Chem asserted that New York law governed the Contracts, and, in its statement of claim, attached opinions of counsel opining or assuming that New York law applied.  *See* Award ¶¶ 162-63, 263.

28.     After submission by Pangang of an expert opinion and reply expert opinion regarding the application of New York law to the Contracts, Petro-Chem abandoned its position that the law of the United States and/or New York law governed the Contracts, *see* Award ¶ 263, and conceded that law set forth in CISG controlled the Contracts' interpretation.  *See id*. ¶ 263.

29.     On November 13, 2013, Petro-Chem formally requested conservatory and interim measures based on Article 28(1) of the ICC Rules.  The Tribunal rejected Petro-Chem's request on the grounds that the application was irreconcilable with Petro-Chem's position in the arbitration and that Petro-Chem had not proposed adequate security.  *See* Award ¶¶ 94, 102.

30.     The Tribunal issued a provisional procedural timeline on December 6, 2013.  The procedural timetable was ultimately adjusted numerous times due to numerous requests from both parties.  *See* Award ¶¶ 48, 109-14.

31.     On December 20, 2013 the parties finalized the Terms of Reference.  *See* Award ¶ 50.

32.     Petro-Chem submitted its Statement of Claim on March 7, 2014, *see* Award ¶ 57, and Pangang filed its Statement of Defense on June 9, 2014, *see id.* ¶ 66.

33.     Five days prior to its June 30, 2014 deadline (the "**Reply Deadline**") for submission of its Statement of Reply (the "**Reply**"), Petro-Chem requested a four-week extension to the Reply Deadline on the basis that it had not received paper copies of Pangang's June 9 filing until June 12, 2014, and that Pangang's voluminous submission required an additional twenty-eight (28) days to answer.  *See* Award ¶ 67.  Pangang withheld consent to Petro-Chem's request for an extension of time, but conditionally consented to an extension of five (5) calendar days.  *See id.* ¶ 70.  The Tribunal rejected Petro-Chem's proposed extension, but granted Pangang's counter-proposed extension of five days.  *See id.* ¶ 72.  *See also id.* ¶ 115.

34.     Petro-Chem submitted its Reply on July 8, 2014, and Pangang submitted its Statement of Rejoinder and Reply on August 11, 2014.  *See* Award ¶¶ 74, 78.

35.     Following various discovery-related and interim proceedings, a final hearing was held in Stockholm, Sweden between September 8 and September 11, 2014 (the "**Hearing**"), during which time both Parties presented oral arguments, examined witnesses, and submitted voluminous documents into evidence.  *See* Award ¶ 87.

36.     At the Hearing, both Petro-Chem and Pangang confirmed on the record that they each had received a proper opportunity to present their cases, subject to Petro-Chem's reservation of its claim that it had inadequate time to prepare its Statement of Reply.  *See* Award ¶¶ 108,[2] 87.

## THE AWARD

37.     On December 12, 2014, the Tribunal issued a Final Award ruling "that [Petro-Chem] had no right to suspend delivery of the Heaters and that [Pangang] did not breach [its] obligations under the Contracts."  *See* Award ¶ 264.

38.     Pursuant to the Contracts' prevailing party provisions and the ICC Rules, the Tribunal also reimbursed Pangang the sum of $1,116,402.85, reflecting its costs, including legal fees and expert fees, as follows:

      a.     Arbitral Fees: $172,485.84 (Award ¶¶ 266(ii), (iv));

      b.     Pangang's Legal Fees: $735,445.97 (*id*. ¶ 266(i), (iii)); and

---

[2] The Tribunal rejected Petro-Chem's complaint that it had inadequate time to prepare its Reply, noting that Claimant (*a*) was solely responsible for instituting the arbitral proceedings, and had sole discretion in investigating and compiling the information necessary to its preparation of its pleadings; (*b*) had thirty-three (33) more days than Pangang did to prepare its pleadings; (*c*) had raised its objection in connection with matters involving U.S. law, which Petro-Chem inserted into the arbitral proceedings (over Pangang's objection) but later abandoned; and (*d*) had negotiated the schedule for proceedings in the arbitration.  *See* Award ¶ 115.

      c.      Pangang's Expert Fees: $208,471.04 (*id.* ¶ 266(ii)).[3]

39.      Petro-Chem's right to appeal the Tribunal's award of fees expired on February 12, 2015.  *See* Award at 65-66 ("A party may bring an action before the Stockholm District Court against the Final Award in respect of the fees awarded to the Arbitral Tribunal.  Such action must be brought within three months from the date upon which the Party received the final award.").

## CONFIRMATION OF THE AWARD IS APPROPRIATE

40.      Petro-Chem has failed to satisfy its payment obligations under the Arbitration Award.

41.      The Award satisfies all the requirements for confirmation pursuant to the FAA, 9 U.S.C. §§ 1, *et. seq.*, and 9 U.S.C. §§ 201, *et. seq.*

42.      This petition to recognize and confirm the arbitral award is timely in that it is brought within three (3) years from the date of the Award.  *See* 9 U.S.C. §§ 207, 302.

43.      None of the circumstances set forth in Article V of the New York Convention as grounds for non-recognition of a Final Award exist in this case.

## PRAYER FOR RELIEF

44.      In light of the foregoing, Petitioners seek an Order from this Court:

      a.      Confirming the Award and entering judgment thereon;

      b.      Directing the entry of judgment in the sum of $1,116,402.85, together with prejudgment and post-judgment interest thereon;

      c.      Awarding Petitioner its fees and expenses incurred in these enforcement proceedings;

---

[3] Monetary conversions were calculated using the currency conversion rate in effect on December 14, 2014.

    d.    Any other relief that this Court deems necessary and proper in the interests of justice.

Dated: December 7, 2015            OBERDIER RESSMEYER LLP
       New York, New York

By: _____
        Carl W. Oberdier
        Kellen G. Ressmeyer
    655 Third Avenue, 28th Floor
    New York, New York 10017
    Tel:  (212) 659-5141
    Fax:  (646) 349-4925

*Attorneys for Petitioners*